IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERACHEM COMILOG, INC. : | |
| : | |
| v. : | Civil No. CCB-07-168 |
| : | |
| UNITED STEEL, PAPER AND FORESTRY, : | |
| RUBBER, MANUFACTURING, ENERGY, : | |
| ALLIED INDUSTRIAL AND SERVICE : | |
| WORKERS INTERNATIONAL UNION, : | |
| AFL-CIO-CLC LOCAL 12517-04 : | |

## MEMORANDUM

Erachem Comilog, Inc. ("Erachem") seeks to vacate an arbitration award entered in favor of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC Local 12517-04 (the "Union"). Defendant Union has filed a counterclaim to affirm the award. Currently pending before the court are both parties' cross-motions for summary judgment. The parties have fully briefed the motions and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, Erachem's motion will be denied, and the Union's motion will be granted.

## BACKGROUND

Defendant Union represents various employees at Erachem's Baltimore manufacturing facility, including John T. Cavey ("Cavey"), who worked as a service employee for Erachem until he was discharged for allegedly misrepresenting his physical condition following a knee injury at work. As provided for in the Collective Bargaining Agreement ("CBA") between Erachem and the Union, the discharge decision was processed through steps of the grievance procedure to arbitration. Richard G. Trotter ("Trotter") was selected as arbitrator, and a hearing

1

was held on October 13, 2006 to address two issues: (1) whether Erachem had "just cause" to terminate Cavey and if not, what should be the remedy; and (2) whether Cavey's due process rights (Weingarten rights) under the CBA were violated. (Pl.'s Summ. J. Mot., Ex. C at 1.)

Holding Erachem failed to prove the company had just cause to discharge Cavey, Trotter ordered Cavey "to be reinstated and made whole in wages, benefits, seniority, and any promotion he would have attained had he not [been] discharged."[1] (*Id*. at 16.) In addition, Trotter stated, "there is credibility to the Union's assertion that Weingarten rights were violated." (*Id.* at 15.) Erachem now seeks to vacate the arbitration award pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

The material facts found by the arbitrator are as follows. While at work on May 15, 2006, Cavey suffered a knee injury. On May 23, 2006, Cavey was treated by Nancy Piercy, CRNP, who advised him not to return to work until he had consulted an orthopedic specialist. On June 2, 2006, Cavey was examined by James York, M.D., an orthopedic surgeon, who determined Cavey had suffered a sprained patella tendon. Dr. York advised Cavey that he should not work for six weeks. On June 6, 2006, Cavey, along with a Union co-worker, met with Erachem management to discuss his injury. At the conclusion of this meeting, Cavey was asked and agreed to submit to an examination by a company physician.

On June 18, 2006, Cavey took a previously scheduled five-day cruise to Bermuda. Three days later, Erachem's Human Resources Manager sent a letter to Cavey indefinitely suspending his employment. In accordance with the CBA's grievance procedure, a meeting was held at

---

[1] Trotter also noted that "the Company did not follow the principles of progressive discipline," although no penalty could have been imposed on Cavey based on Trotter's finding that he had not committed any punishable offense. (Pl.'s Summ. J. Mot., Ex. C at 14-15.)

Erachem regarding Cavey's suspension on June 30, 2006. On July 6, 2006, plaintiff discharged Cavey for the cited reason of "misrepresenting his condition regarding his ability to work after an alleged work related injury," and more specifically because Cavey was captured on videotape "driving, walking, bending and leaving for a cruise," despite claiming he was unable to work in any capacity or to drive a vehicle to and from work. (Pl.'s Summ. J. Mot., Ex. C at 3-4.)

Thereafter, on July 25, 2006, John B. Donnelly, M.D., the physician selected by Erachem to examine Cavey, concluded he had sustained a lateral meniscel tear at the time of his fall, which necessitated the medical treatment Cavey received. (*Id*. at 4.) In August 2006, the State of Maryland Department of Labor, Licensing and Regulation Division of Unemployment Insurance ("Unemployment Compensation Board") awarded Cavey unemployment benefits after determining that insufficient evidence had been presented to show Workers' Compensation fraud. (*Id*., Ex. G.) In October 2006, Cavey also was awarded Workers' Compensation.[2]

## ANALYSIS

### A.  Standard of Review

Judicial review of arbitral awards in the collective bargaining context is "among the narrowest known to the law." *Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 91 (1978) (internal quotations omitted). The court is not entitled to decide the merits of the dispute. Rather, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504,

---

[2]  Erachem did not appear at any hearing on unemployment benefits, although the company did present evidence at the Workers' Compensation hearing. (Pl.'s Summ. J. Mot., Ex. D ¶ 3-4.)

509 (2001) (internal quotations omitted).  The rationale behind this deference to the arbitrator is that it is the arbitrator's interpretation of the facts and the agreement that the parties bargained for, so it is the arbitrator's ruling that the parties should get, so long as the arbitrator "did his job."  *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

The only circumstance in which the court may vacate an arbitral award on the merits is "when the arbitrator strays from interpretation of the agreement and effectively 'dispense[s] his own brand of industrial justice.'"  *Garvey*, 532 U.S. at 509 (quoting *Enter. Wheel & Car*, 363 U.S. at 597 (alterations in original)).  In the Fourth Circuit's words, "we may vacate an arbitrator's award only if it 'violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong.'"  *Yuasa, Inc. v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers*, 224 F.3d 316, 321 (4th Cir. 2000) (quoting *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 168 F.3d 725, 729 (4th Cir. 1999)).

The central consideration in determining whether the award "drew its essence" from the contract is the text of the agreement.  *See Mountaineer Gas*, 76 F.3d at 608.  Thus, "[w]hen determining whether the arbitrator did his job, [the] court examines: (1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's . . . limits." *Id.*

**B.  Just Cause**

In asking this court to vacate the arbitration award, Erachem takes issue with Trotter's reliance on the Unemployment and Worker's Compensation awards, about which Trotter wrote:

> While the Unemployment Compensation proceedings and the Worker's Compensation proceedings are separate proceedings from this case, nonetheless, the arbitrator can consider the outcomes of those proceedings since those proceedings were based on the same body of evidence and do give credibility to the Union's position that the Company has not established by a 'preponderance of evidence' that it has met its burden of proof under the 'just cause' provision of Article 501.

(Pl.'s Summ. J. Mot., Ex. C at 14.)  Erachem argues that "no such 'body of evidence' existed" because the Union did not present testimony or evidence about what happened at any hearing, submitting only the written findings that Cavey had received Unemployment and Workers' Compensation benefits.

While a judicial determination by one administrative agency may not be binding on another adjudicator operating under a different statute, *see Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 361-62 (4th Cir. 1985), Erachem has not cited to any case that prohibits Trotter from regarding these administrative determinations as one factor, among many, supporting a finding that Cavey did not misrepresent his injury.  Even if Trotter's reasoning for relying on these decisions is misplaced, it is clear that Trotter's consideration of these awards was minimal, and this court cannot "sit to hear claims of factual or legal error by an arbitrator as long as the arbitrator is even arguably construing or applying the contract."  *Champion*, 168 F.3d at 728.

Trotter articulated a number of reasons for his decision that Erachem did not have just cause to discharge Cavey, emphasizing, "[t]he arbitrator is of the opinion that this case is not one of equally believable positions, but one in which the evidence strongly supports the Union's contention that the Company has not met its burden of proof by a preponderance of the

5

evidence." (Pl.'s Summ. J. Mot., Ex. C at 14.)  This court is not permitted to second-guess factual determinations.  "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Garvey*, 532 U.S. at 509 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987)).

First, Trotter found Cavey had not committed a dischargeable offense under either the CBA or the employee handbook.  He then considered whether Erachem had an inherent and contractual management right to terminate Cavey under arbitral precedent, which the company argued established that an employer may properly discharge an employee who misrepresents the condition of his physical injury.

In holding that Cavey had not engaged in any such deceit, Trotter made two significant factual distinctions between the precedent presented by Erachem and the circumstances before him in the present case.  First, Trotter concluded that Cavey's conduct during his period of leave was not "out of the every day routine," unlike the conduct of some of the employees in the cases cited by Erachem. (Pl.'s Summ. J. Mot., Ex. C at 13.)  Second, Trotter pointed out that the opinion of Nancy Piercy was confirmed by Erachem's own doctor, which supported the Union's position that Cavey's injury was not exaggerated.  This type of "objective medical documentation," Trotter noted, was lacking in the cases cited by Erachem.  (*Id.*)

Trotter further rejected evidence presented by Erachem as not supporting the company's contention that Cavey had misrepresented his condition.  For example, Trotter found that a video taken of Cavey without his knowledge showed him using a cane despite not knowing anyone was watching him.  In addition, although Cavey had gone on a cruise during his time away from

work, Trotter found that "[a] cruise is not an activity inconsistent with a disability." (*Id*. at 14.)

Trotter then cited the Unemployment Compensation and Workers' Compensation proceedings as additional support lending credibility to the Union's already strong position that Erachem lacked just cause to dismiss Cavey. Even if Trotter was mistaken in relying, however minimally, on this bit of evidence, he undertook a good-faith effort to interpret the CBA and came to a rational conclusion grounded in the contract's language. In light of the multiple grounds on which Trotter based his ultimate decision, this court will not vacate the award simply because he looked to the Unemployment and Worker's Compensation decisions as guidance. Trotter acted well within his authority in determining Erachem did not have "just cause" to terminate Cavey.

### C. Weingerten Rights

Having concluded that Cavey had not committed any offense for which he could be penalized by his employer, Trotter next briefly addressed whether Cavey's due process rights under the CBA were violated. Section 14.01 of the CBA reads: "In the event an employee is summoned to the office by management for an investigatory interview, which the employee believes would result in discipline, the employee has the right to Union representation." (Pl.'s Summ. J. Mot., Ex. C. at 2.) This provision reflects the holding of *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 257, 261-62, 267 (1975), in which the Supreme Court held that § 7 of the National Labor Relations Act guarantees an employee the right to request Union representation when he reasonably believes an investigation will result in disciplinary action.

In his opinion, Trotter correctly stated the applicable law under *Weingarten*, but then appears to have misunderstood a significant limitation of this statutory right recognized in the

case law and reflected in the plain language of the CBA: an employee must reasonably believe an investigatory interview will result in discipline in order to invoke his *Weingarten* rights. *See id*. at 257. Disregarding this limitation, Trotter explained that because Cavey "did not believe the accident investigation was part of a potential disciplinary proceeding," he could not have "failed to assert his right to representation." (Pl.'s Summ. J. Mot., Ex. C at 15.) To the contrary, under *Weingarten*, an employee's right to Union representation arises "only in situations where the employee requests representation" and "reasonably believes the investigation will result in disciplinary actions." *Id*.

While Trotter may have failed to draw from the plain and unambiguous language of the CBA in this statement of law, he does not appear to have based the arbitration award on this two-sentence reasoning in his opinion. Only an award that does not draw its essence from the contract will be vacated. *See Yuasa*, 224 F.3d at 321. Here, the arbitration award reinstating Cavey results from Trotter's holding that Erachem did not have just cause to discharge Cavey. Trotter states only that "there is credibility to the Union's assertion that Weingarten rights were violated," but he does not anywhere hold that Cavey's *Weingarten* rights actually were violated. (Pl.'s Summ. J. Mot., Ex. C at 15.) Moreover, this part of his opinion is not referred to in the "Summary of Arbitrator's Findings."[3] Thus, Trotter's possible misapplication of the law should be considered dictum as it does not appear necessary or even relevant to his ultimate award

---

[3] Instead, Trotter's main point in the four paragraphs in which he discusses *Weingarten* rights is that the presence of a Union co-worker is not equivalent to that of a Union representative, which according to Trotter "implies someone who has an official capacity in the Union not merely a co-worker who is a member of the Union." (Pl.'s Summ. J. Mot., Ex. C at 15.) This finding is contained in the "Summary of Arbitrator's Findings," and reasonably may be read to draw its essence from the contract, which specifically requires the presence of a Union representative. (*See id*. at 2.)

reinstating Cavey.

Even if it is unclear whether Trotter's reasoning in this minor portion of his opinion influenced his award, which this court does not believe it did, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enter. Wheel & Car*, 363 U.S. at 598.

## CONCLUSION

In sum, Trotter premised his award reinstating Cavey on his conclusion that Erachem did not have just cause for Cavey's discharge under the CBA. Erachem has not met its exacting burden of showing Trotter dispensed his own brand of justice when granting this award. As a result, this court will confirm the arbitration award, grant defendant Union's motion for summary judgment, and deny plaintiff's cross-motion.

A separate order follows.

   April 19, 2007                                             /s/
       Date                                                   Catherine C. Blake
                                                            United States District Judge